IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 22-CR-353-JFH |
| DANIEL ROBERT FROST, | |
| Defendant. | |

**OPINION AND ORDER**

Before the Court is a motion to suppress evidence ("Motion") filed by Defendant Daniel Robert Frost ("Defendant") based upon the Fourth Amendment. Dkt. No. 18. The United States of America ("Government") opposes the Motion. Dkt. No. 20. Defendant also filed a supplement to his motion after receiving dashboard camera evidence. Dkt. No. 25. The Court held a hearing on the Motion on November 22, 2022. For the reasons stated below, the Motion is DENIED.

**STANDARD**

A suppression motion under Federal Rule of Criminal Procedure 12(b)(3)(C) is meant to "determine preliminarily the admissibility of evidence allegedly obtained in violation of defendant's rights under the Fourth and Fifth Amendments." *United States v. Merritt*, 695 F.2d 1263, 1269 (10th Cir. 1982). The Federal Rules of Evidence generally do not apply to suppression issues. *Id.* (citing Fed. R. Evid. 104(a)). "On a motion to suppress, the district court must assess the credibility of witnesses and determine the weight to give to the evidence presented; the inferences the district court draws from that evidence and testimony are entirely within its discretion." *United States v. Goebel*, 959 F.3d 1259, 1265 (10th Cir. 2020). "The defendant has the burden of showing the Fourth Amendment was implicated, while the government has the burden of proving its warrantless actions were justified." *Id.* (citing *United States v. Carhee*, 27

F.3d 1493, 1496 (10th Cir. 1994); *United States v. Simpson*, 609 F.3d 1140, 1146 (10th Cir. 2010)). Both these burdens require proof by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974). The Court must state essential factual findings on the record. Fed. R. Crim. P. 12(d).

## BACKGROUND

Defendant is charged with four counts: (1) drug conspiracy; (2) possession of fentanyl with intent to distribute; (3) possession of methamphetamine with intent to distribute; and (4) possession of a firearm in furtherance of a drug trafficking crime. Dkt. No. 2. On September 15, 2022, at approximately 9:10 p.m., Trooper Joshua Loftin observed a white Buick sedan near the intersection of 31st Street and Mingo in Tulsa, Oklahoma. Dkt. No. 18 at 1, 4.[1] The vehicle was being driven by Defendant. *Id*. at 1. As the vehicle approached a red light, Trooper Loftin observed that neither Defendant, nor the front seat passenger, were wearing a seatbelt. *Id*. Trooper Loftin activated the lights on his police car, initiating a traffic stop, and Defendant immediately complied, pulling into a QuikTrip parking lot to stop. *Id*.

Upon approaching the vehicle, Trooper Loftin observed that Defendant appeared "extremely nervous." Dkt. No. 18 at 1. When asked for his license and registration, Defendant "began to dig around [ ] franticly." Dkt. No. 20 at 2. Likewise, Defendant's passenger appeared nervous and was observed attempting to hide a brown paper bag in the glovebox. Dkt. No. 18 at 2. Trooper Loftin also observed an odor of marijuana. *Id*. Trooper Loftin asked Defendant to exit the vehicle and sit in the passenger seat of his police car while he ran Defendant's information. *Id*. As Defendant was exiting his vehicle, Trooper Loftin observed "multiple small clear baggies and

---

[1] For purposes of this Order, the Court accepts the Defendant's recitation of the facts except where noted to include additions or differences stated in the Government's briefing, or as taken directly from the evidence and testimony as presented at the November 22, 2022 hearing.

aluminum foil with burn marks and residue on it" on Defendant's seat and observed Defendant kick a black box under the driver seat of the vehicle. *Id.*

In the police car, Trooper Loftin asked Defendant if there was marijuana in the car. Dkt. No. 18. Defendant indicated that there was. *Id.* Trooper Loftin then asked Defendant if he had a medical marijuana card, which Defendant stated that he did and that it was in his car. Dkt. No. 25 at 1. Trooper Loftin asked Defendant where the marijuana was located in his car and Defendant told him it was in the center console. Dkt. No. 26 at 8:34-8:39. Trooper Loftin responded "okay, hang tight" and exited the patrol car. *Id.* at 8:39-8:42. Before heading back to Defendant's car, he asked whether he would find anything else illegal in the car, to which Defendant responded, "no sir." *Id.* at 8:42-8:46.

Trooper Loftin approached Defendant's driver side door and opened it. Dkt. No. 18 at 2. Upon opening the door, Trooper Loftin observed two (2) firearms on the floorboard, a black revolver and a silver semi-automatic pistol, one of which was loaded. *Id.*; *see also* Dkt. No. 20 at 2. In the center console, Trooper Loftin found the marijuana, along with "a glass smoking pipe, the kind usually associated with methamphetamine." Dkt. No. 20 at 3. Trooper Loftin then searched the box under Defendant's driver seat and found "[three] baggies containing blue pills, common M30 fentanyl pills[,] and a small bag of loose white powder." *Id.*

After this discovery, Trooper Loftin returned to the patrol car and placed Defendant in handcuffs. Dkt. No. 26 at 10:20- 10:45. Trooper Loftin asked Defendant what the pills were and Defendant confirmed they were fentanyl. *Id.* Trooper Loftin testified that he inquired about the pills out of concern for officer safety, because there is risk in handling fentanyl. Defendant also told Trooper Loftin that he would probably also find dope in the vehicle. *Id.* Trooper Loftin asked whether his passenger knew of the narcotics and Defendant stated that she did. *Id.* Trooper Loftin

3

then returned to the vehicle to detain the passenger and continue his search of the vehicle. Dkt. No. 20 at 3. The search yielded: "(1) three baggies containing blue pills, identified as M30 Fentanyl Pills; (2) a small bag of loose white powder; (3) a large amount of a crystal-like substance, identified as methamphetamine; (4) plastic baggies; and (5) bundles of money." Dkt. No. 18 at 2.

After completing the search, Trooper Loftin returned to the vehicle and read Defendant the Miranda warning. Dkt. No. 26 at 42:40-43:00. Defendant agreed to talk with Trooper Loftin and proceeded to do so on the drive to book Defendant into the Tulsa County Jail, making various incriminating statements. Dkt. No. 20 at 3-4.

## AUTHORITY AND ANALYSIS

I. **Fourth Amendment**

   A. **Traffic Stop**

First, Defendant argues that the traffic stop was invalid at its inception. Dkt. No. 18 at 2-3. Defendant appears to acknowledge that Trooper Loftin's stated reason—observing Defendant and his passenger not wearing seatbelts—would be valid justification for the traffic stop. However, Defendant argues that "the factual circumstances call into question the officer's ability to gauge the violation that he articulated in his report." *Id*. at 4. Specifically, Defendant argues that because the traffic stop occurred at approximately 9:10 p.m., it would have been too dark to see inside the vehicle and observe that Defendant and his passenger were not wearing seatbelts. *Id*. Defendant further urges that Defendant's vehicle had tinted windows and that the headrests of both the front and rear passenger seats had car-hammocks attached, which would make it even more difficult for Trooper Loftin to observe the purported traffic violation. *Id*.

"[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or

equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). In adopting this standard, the Tenth Circuit noted that it "more effectively promotes an objective assessment of police officers' actions, as required by the Supreme Court." *Id*. (citing *Maryland v. Macon*, 472 U.S. 463, 470 (1985); *Scott v. United States*, 436 U.S. 128, 138 (1978)). The sole inquiry for the Court in determining whether a particular traffic stop is valid is whether the traffic stop was objectively justified; the officer's subjective motives are irrelevant. *Id*. at 788.

Here, Trooper Loftin has articulated specific facts—that he observed that Defendant and his passenger were not wearing seatbelts—to justify the traffic stop. Based upon the testimony of Trooper Lofton, which the Court finds credible, as well as the video from Trooper Loftin's dashboard camera, the Court finds that Trooper Lofton observed that Defendant and his passenger were not wearing seatbelts. Because Trooper Loftin had a reasonable articulable suspicion that a traffic violation was occurring, the stop did not violate the Fourth Amendment and the Court need not inquire further into the circumstances surrounding the stop. The Court therefore finds that the traffic stop was valid at its inception.

**B. Search of the Vehicle**

Defendant next argues that, even if the traffic stop was valid at its inception, the eventual search of the passenger compartment of the vehicle was unlawful. Dkt. No. 18 at 3-4. Specifically, Defendant contends that "the act of opening [Defendant's] door, without consent" was an unreasonable search under the Fourth Amendment because it "was not supported by probable cause." Dkt. No. 25 at 2. This Court disagrees.

The general rule that warrantless search or seizure is per se unreasonable under the Fourth Amendment has a few specifically established and well-delineated exceptions, one of which is the

"automobile exception." *United States v. Burgess*, 576 F.3d 1078, 1087 (10th Cir. 2009).  This doctrine developed first because "a 'necessary difference' exists between searching 'a store, dwelling house or other structure' and searching 'a ship, motor boat, wagon or automobile' because a 'vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.'" *Collins v. Virginia*, 138 S. Ct. 1663, 1669 (2018) (quoting *Carroll v. United States*, 267 U.S. 132, 153 (1925)).  Later, the Supreme Court "introduced an additional rationale based on 'the pervasive regulation of vehicles capable of traveling on the public highways.'" *Id.* (quoting *California v. Carney*, 471 U.S. 386, 392 (1985)).

Under the automobile exception, "officers may search an automobile without having obtained a warrant so long as they have probable cause to do so." *Id.* (quotation omitted).  "The right to search and the validity of the seizure are not dependent on the right to arrest.  They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." *United States v. Lopez*, 777 F.2d 543, 550 (10th Cir. 1985) (quoting *Carroll*, 267 U.S. at 158-59).  *See also id.* at 551 ("The probable cause requirement is satisfied when the officers conducting the search have reasonable or probable cause to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search." (quoting *United States v. Matthews*, 615 F.2d 1279, 1287 (10th Cir. 1980))).  When officers "have probable cause to believe a vehicle contains contraband or evidence of criminal activity, the police may seize it without a warrant and hold it for 'whatever period is necessary to obtain a warrant for the search.'" *United States v. Shelton*, 817 F. App'x 629, 634 (10th Cir. 2020) (quoting *Chambers v. Maroney*, 399 U.S. 42, 51-52 (1970)).[2]  "Probable cause

---

[2] Unpublished opinions are not binding precedent but may be cited for their persuasive value. *See* 10th Cir. R. 32.1; Fed. R. App. P. 32.1.

exists 'when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed . . . .'" *Patel v. Hall*, 849 F.3d 970, 981 (10th Cir. 2017) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007)).

Here, the evidence shows that Trooper Loftin had probable cause. First, Trooper Loftin testified that when he approached the vehicle, he observed a strong odor of marijuana coming from the vehicle. The Tenth Circuit has recognized that the odor of marijuana "'would lead a person of ordinary caution to believe the passenger compartments might contain marijuana'" and, therefore, gives rise to a reasonable suspicion to believe the driver or passenger of the vehicle are violating federal drug laws. *United States v. Torres*, 987 F.3d 893, 903 (10th Cir. 2021) (quoting *United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993)). The Court finds *Torres* controlling regardless of whether or not Defendant had an Oklahoma medical marijuana card. An Oklahoma medical marijuana card does not automatically dispel reasonable suspicion of criminal activity, let alone a person's mere declaration that he has an Oklahoma medical marijuana card.[3]

Additionally, Trooper Loftin testified to various other factors which, taken together, along with the odor of marijuana, gave rise to probable cause that there were other drugs in Defendant's vehicle: (1) that Defendant appeared "extremely nervous"; (2) that Defendant "began to dig around [ ] frantically" when asked for his driver's license and insurance; (3) that Defendant's passenger appeared to be hiding a brown paper bag in the glovebox; (4) that Defendant kicked a black box under his driver seat as he was exiting the vehicle; and (5) that Officer Loftin observed "multiple small clear baggies and aluminum foil with burn marks and residue on it" on Defendant's seat as

---

[3] The Court notes that Defendant could not produce a medical marijuana card. However, more importantly, marijuana remains illegal under federal law. *See* 21 U.S.C. §§ 812(b)(1) and 814.

Defendant was exiting the vehicle.  Dkt. No. 18 at 1; Dkt. No. 20 at 2; Dkt. No. 18 at 2.  The Court finds the facts and circumstances known to Trooper Loftin at the time are sufficient in themselves to warrant a person of reasonable caution to believe that an offense had been or was being committed.  *See Patel,* 849 F.3d at 981.  Therefore, because probable cause existed, the Court finds that Trooper Loftin's search of Defendant's vehicle was valid under the Fourth Amendment.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress [Dkt. No. 18] is DENIED.

DATED the 23rd day of November 2022.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE